CARL L. STROM.

*Plaintiff and Appellant,*

vs.

ANNA K. FELTON,

*Defendant and Respondent.*

(No. 2738; October 30th, 1956; 302 Pac. (2d) 917)

Heard before Blume, Chief Justice, Harnsberger, Justice, and Pearson, District Judge.

For the plaintiff and appellant the cause was submitted upon the brief of G. R. McConnell and Walter Scott of Laramie, Wyoming, and oral argument by Mr. McConnell.

For the defendant and respondent the cause was submitted upon the brief of Greenwood, Ferrall & Bloomfield of Cheyenne, Wyoming, and Sullivan & Sullivan of Laramie, Wyoming, and oral argument by Mr. C. N. Bloomfield, Jr.

## OPINION

Blume Chief Justice.

This is an action commenced on August 18, 1954, by Carl L. Strom, as plaintiff, against Anna K. Felton, as defendant, to have the deeds to the latter to certain property in Laramie, Wyoming, set aside for the reasons hereinafter discussed. The relief prayed by the plaintiff was denied by the trial court, and from a judgment in favor of the defendant, the plaintiff has appealed. The parties will generally be mentioned as in the court below.

The plaintiff filed an amended petition, and set forth three causes of action. The brief of the defendant herein contains a succinct, but quite accurate, statement of the allegations in the petition, and we shall largely follow it, making a few changes.

In the first cause of action at paragraph 1, 2 and 3, the plaintiff alleged, in substance, that he and Ina R. Strom were married on April 11, 1949, and were husband and wife until Ina R. Strom's death August 1, 1954. That on May 12, 1954, Ina R. Strom owned, individually, the west 60 feet of Lot 8, Block 215, in the Original Town of Laramie, Wyoming; and that plaintiff and Ina R. Strom owned as tenants by the entireties the center 36 feet East of the West 60 feet in the same lot and block. Defendant admitted these allegations.

In paragraph 4, plaintiff alleged that on May 12, 1954, the defendant procured Ina R. Strom to execute and deliver to defendant deeds of conveyance to the two above described parcels of land, together with a bill of sale to certain personal property owned by Ina

R. Strom. That no consideration was paid by defendant for either the real or personal property, and defendant knew Ina R. Strom was mentally incapable of transacting business or comprehending the nature or effect of signing said deeds and bill of sale. The defendant, with the intention of defrauding said Ina R. Strom, accepted said deeds and bill of sale. The defendant admitted receiving the deeds and bill of sale, and denied all other allegations in paragraph 4.

In paragraph 5, plaintiff alleged and defendant admitted she was in possession of the deeded lands claiming to be the exclusive owner, and refused to permit plaintiff to have any part thereof or to share with the plaintiff the rents and profits from said lands. The plaintiff alleged and defendant denied that the monthly rentals accruing from said real property totaled $215.

In paragraph 6, plaintiff alleged defendant had removed certain personal property of Ina R. Strom out of the jurisdiction of the court subsequent to the plaintiff's filing his original petition herein, and would continue to remove said property. Plaintiff, on belief, alleged that defendant would convey away said real property. That defendant should be restrained from removing the personal property or from conveying or encumbering the real property. Defendant admitted she had removed certain personal property after the original petition was filed, but had not removed any property subsequent to being served with a restraining order.

In paragraph 7, plaintiff alleged and defendant denied that he was the sole owner in equity of the real and personal property, and entitled to have the same set over to him by reason of a will executed May 12, 1949, by Ina R. Strom.

In the second cause of action in paragraph 1, the plaintiff incorporated paragraphs 1, 2, 3, 5, 6, and 7 of the first cause of action to which the defendant made the same answer as she made to the first cause of action.

In paragraph 2, plaintiff re-alleged the allegations of paragraph 4 of the first cause of action, except for the allegation that defendant paid no consideration whatever for said real and personal property. Defendant made the same answer to the allegations of paragraph 2 that she made to paragraph 4 of the first cause of action.

In paragraph 3, plaintiff alleged and defendant denied that defendant promised Ina R. Strom to pay all bills and obligations, secured and unsecured, incurred by her prior to May 12, 1954, and all obligations incurred subsequently for the treatment of cancer, setting forth a number of such obligations amounting to more than $5,000; that defendant promised to support Ina R. Strom for the remainder of her life; that defendant abandoned said Ina R. Strom immediately after the deeds and bill of sale were executed and delivered to defendant, and did not pay any of the bills and obligations of Ina R. Strom as promised.

In the third cause of action in paragraph 1, plaintiff re-alleged by reference his entire first cause of action to which defendant made the same answer.

In paragraph 2, plaintiff alleged he loaned Ina R. Strom $1,000 on or about February 2, 1949, and another loan of $830 on or about May 12, 1949. That in addition, plaintiff had performed work and labor upon the real property here involved in the reasonable amount of $1,000. Defendant denied each and every allegation.

In paragraph 3, plaintiff alleged the conveyances to defendant by Ina R. Strom were fraudulent as to plaintiff who was a creditor of Ina R. Strom at the time said conveyances were made. Defendant denied each and every allegation.

In each of the foregoing three causes of action, the plaintiff prayed that said deeds of conveyances and bill of sale be delivered up to plaintiff and canceled; that defendant render to plaintiff an accounting of all rents and profits accruing from said real property, together with interest thereon, and that defendant be restrained by order of the court from removing any personal property from the court's jurisdiction and further restrained from either conveying or encumbering the real property.

The plaintiff in his reply denied each and every allegation of new matter alleged by the defendant.

At the close of the trial the court found generally in favor of the defendant, and decreed that plaintiff take nothing by reason of his petition.

We may here mention a few general facts. The plaintiff and Mrs. Strom were married in 1949. Prior to the marriage the plaintiff apparently had lived in California, but moved to Laramie thereafter. The parties did not get along any too well after the first year, and that was perhaps partially true because plaintiff did not give his wife much money for support —some $35 or $40 per month. That seems to have been due because plaintiff claimed that Mrs. Strom had a greater income than he had. The income of Mrs. Strom was not great. While plaintiff claims that it was as much as $250 per month, there is testimony in the record that it was not more than about $140 per month. Mrs. Strom was about seventy-four

years of age when she died about August 1, 1954. The age of the plaintiff is not shown.

Early in the year 1954 Mrs. Strom was informed, when in a hospital in Denver, that she had malignant cancer. It is not clear how long she remained in Denver. In the late winter or early spring of 1954, she moved back to her home in Laramie, Wyoming. While still in Denver she tried to get her step-daughter to take care of her. But the latter was unable to do so, since she had a family, including children of her own. Mrs. Strom then tried to get Mrs. Munn—apparently a nurse—to take care of her. Mrs. Munn was unable to do so on account of her own family. Mrs. Strom then engaged the defendant—apparently a nurse—to take care of her, including nursing, cooking, and doing other things for her. Defendant, living in Lincoln, Nebraska, was apparently an old friend of Mrs. Strom, for the former visited the latter in 1952. There is some testimony in the record that the defendant waited upon Mrs. Strom even while the latter was in Denver, but the extent thereof is indefinite. In any event the defendant took care of her after Mrs. Strom moved back to Laramie, the length of time again being indefinite. It was probably from about March 1, 1954, or a little before, up to about the middle of June or some days thereafter. In the latter part of June 1954, defendant left for Lincoln, Nebraska, to attend to some business and did not return to Laramie until after the death of Mrs. Strom.

About March 6, 1954, Mrs. Strom gave a bill of sale to defendant for "all furniture and personal articles." On March 19, 1954, Mrs. Strom and her husband borrowed $3,000 from the First National Bank of Laramie, Wyoming, secured by a mortgage on the west 60 feet of the property in controversy. That

mortgage was placed on record on March 22, 1954. On May 12, 1954, Mrs. Strom for "a nominal consideration" gave a warranty deed to defendant for the "West sixty feet of Lot eight, Block two hundred fifteen, Old Town, City of Laramie, Albany County, Wyoming. Reserving to the grantor a life estate in the above described premises together with a right of possession, use and enjoyment thereof, including the rents and profits, so long as the grantor shall live." On the same day Mrs. Strom gave to defendant a quitclaim deed—all her right, title and interest— to "Thirty-six feet of Lot eight, in Block two hundred fifteen, directly east of the west sixty feet of said lot 8 in Block two hundred fifteen, Old Town, City of Laramie, County of Albany, Wyoming." These are the deeds in controversy herein, and are sought to be set aside for the reasons hereafter discussed.

EFFECT OF MOTION TO DISMISS.

At the close of plaintiff's case, the defendant moved that the plaintiff's petition be dismissed on the ground that there was no evidence proving the issues in the case. The motion was overruled. Counsel for plaintiff now say, notwithstanding that the motion was overruled, that such motion admits the truth of all the testimony of the plaintiff's witnesses and they cite us to Hawkey v. Williams, 72 Wyo. 20, 261 P.2d 48, where it appears the motion was sustained by the trial court. It seems to be the contention of counsel that plaintiff's testimony must be considered as true whether the motion was overruled or not. The statement made by counsel for plaintiff is inaccurate and the contention so far as this case is concerned wholly wrong. The statement of counsel is correct when the trial court considers as to whether or not the motion should be sustained or overruled and the statement is true for a case pending in this court when the trial

court sustains the motion, but when the motion is overruled, the case in this court is in the same position as though no such motion had been made. Then the case is exactly in the same situation as any other case in which, for the purpose of determining the validity of the judgment of the trial court, we consider only the testimony favorable to the party for whom the judgment was rendered. In other words the statement of counsel is correct only for the purpose of determining whether or not the motion should be sustained or overruled. Thus it is said in 64 C.J. 434; 88 C.J.S. § 255, p. 614:

"Moreover, the scope of the motion as an admission is limited to matters involved in the consideration thereof, and it is not binding as such to any greater extent."
Such motion to dismiss on the ground of failure of proof is in the nature of the demurrer to the evidence. 88 C.J.S. 514, note 67.

In 71 C.J.S. § 261, p. 533, it is stated:

"On demurrer or exception to a pleading, the truth of well-pleaded allegations is admitted for the purpose, and only for the purpose, of passing on the sufficiency in law of the pleading."

If the contention of counsel were correct that in any and all events where such motion is made all the testimony against the movant must be admitted as true, then it would be futile for the movant to introduce evidence for the purpose of contradicting or explaining testimony of the other side. But the rule is that such testimony is admitted. Thus it is stated in 88 C.J.S. § 246, p. 587:

"On denial of a motion for dismissal or nonsuit the court cannot give judgment for plaintiff, but the case should go to the jury; and when the motion is denied at the close of plaintiff's case, defendant is entitled

to submit proofs on denials and affirmative matters set up in the answer."

In Porter v. Pincock, 44 Idaho 235, 256 P. 93, the court stated:

"By the motion for nonsuit, all the material evidence of plaintiff, with all reasonable inferences properly deducible therefrom in favor of plaintiff, are admitted.

* * * * *

However, while the admissions for the purpose of the motion for nonsuit made its denial proper, yet, when the motion was denied, the denials and affirmative matter set up in the answer entitled defendant to submit proof and have the issues of fact submitted to the jury."

It follows from what we have said that we must consider this case from the same standpoint as other cases in which no such motion to dismiss was made and must merely determine as to whether or not there was sufficient evidence in the case to sustain the judgment rendered, disregarding all evidence favorable to the plaintiff.

## MENTAL CONDITION.

Counsel for plaintiff argue that Mrs. Strom was mentally incompetent and in that connection say there was fraud, undue influence and duress on the part of defendant in obtaining the deeds in question. But we fail to find any evidence in the record showing there was any fraud or duress on the part of the defendant in this case to obtain the deeds in question. It is altogether clear that Mrs. Strom did not want her husband to have the property and that she chose the defendant as the grantee. There is ample evidence in the record that Mrs. Strom was mentally competent and there is very little use in referring to the authorities cited by counsel which relate, for instance, to

the fact that courts will carefully scrutinize transactions with persons of old age and persons afflicted with cancer. The witness Mrs. Rasmussen testified that Mrs. Strom's mind was clear even up to the day prior to her death. Mrs. Perkins testified that so far as she knew Mrs. Strom was in her right mind at the time the deeds in question were executed and that her mental condition did not appear any different from 1953 to the time of her death. Mr. Fitch, the notary public who notarized the deeds in question, testified that Mrs. Strom appeared to be perfectly normal and that she talked logically and sanely. There is a letter in the record which Mrs. Strom wrote to the defendant dated June 27, 1954, which will be mentioned again later. That letter is not a letter of a person who was mentally incompetent but seems to be a letter of a person who knew exactly what she was doing. The letter was written about a month and a half after the deeds were executed. There is testimony in the record that the defendant told Mrs. Stephenson in February or March of 1954 that Mrs. Strom had gone insane and that defendant could have Mrs. Strom declared incompetent. So counsel for plaintiff argue that a condition of insanity once established is presumed to continue until the contrary appears. The trouble is that according to other evidence the insanity was not established as existing in February and March even though plaintiff may have thought so. It is not unlikely that when Mrs. Strom first heard she had cancer that she was very much upset, but subsequently adjusted her mind to her condition.

Defendant merely testified that she was in Lincoln, Nebraska, in July 1954, and identified a letter to her written by Mrs. Strom, tending to show that defendant was excused during that time from attending the form-

er. She did not explain her transactions with Mrs. Strom, and counsel for plaintiff insist that she should have done so. We, along with counsel for the plaintiff, would have been much more satisfied if she had done so. But it was not incumbent on the defendant to prove plaintiff's case. The burden to prove Mrs. Strom's mental incompentency, fraud, duress and undue influence was on the plaintiff, not on the defendant. 26 C.J.S. §§ 190-192, pp. 603-608; 12 C.J.S. §§ 69, p. 1053; 9 Am.Jur. 400. Moreover, counsel for the plaintiff had the opportunity to call defendant to the witness stand for cross-examination, without being bound by her testimony. They did not do so, and the lack of testimony on defendant's part may be laid at the door of counsel for the plaintiff, as much as at the door of anyone else. In any event the record in this case fully and amply justified the trial court in its holding, inferentially, on the points here discussed, so that we cannot, under our well known rules, do anything else than sustain the trial court.

LACK OF CONSIDERATION.

It is contended that the deeds in question were given without consideration, or were given with an expected consideration which in fact was not paid. We shall for the moment pass the question in so far as it relates to creditors. Counsel for plaintiff admit the correctness of the rule as stated in 26 C.J.S. § 16, pp. 189, 190, which is as follows:

"By far the more universal rule, however is that, as between the parties, their heirs or privies, a deed is good without consideration, in the absence of some wrongful act on the part of the grantee, such as fraud, or undue influence, this conclusion being based by some authorities on the ground that it evidences an executed gift or contract, and byothers on the ground that the statutes governing conveyances give the deed the effect of a common-law feoffment."

As we have already stated, the record is devoid of testimony of fraud and undue influence, and if Mrs. Strom, mentally competent, wanted to convey the property in question to the defendant, and she did so, the conveyance is valid though without consideration. However the actual position apparently taken by counsel for plaintiff is that the consideration was —as is likely true, at least in part—that defendant was to take care of Mrs. Strom during the remainder of the latter's life, and it is contended that defendant breached the contract. That contention appears to be based on the fact that defendant was in Lincoln, Nebraska, in July 1954, the last month of life of Mrs. Strom. However it would seem that defendant was there at that time with the consent of Mrs. Strom as appears from the letter of Mrs. Strom to defendant, dated June 27, 1954, and which reads in part as follows:

"I am feeling fine and have not had hardly any pain since I have been home and have been going to the bath and around the house. * * *
"Hope you get everything attended to and in apple pie order. I am getting along fine and so you don't need to worry and take all the time you need and get it done and rented and a good person to look after them and don't wear yourself out."

It would seem the condition of Mrs. Strom became worse toward the middle or latter part of July 1954. She evidently became impatient that defendant had not yet returned, and then regretted that she had made the conveyances to defendant, stating, as testified to by the witness Plumb, that defendant had agreed to take care of her during the remainder of her life and that she had not done so. However, defendant, so far as the testimony shows, did not know that Mrs. Strom's condition had become worse so suddenly and that she was demanding her

presence in Laramie, so we cannot say she was legally at fault, although we are not prepared to say what is true ethically.

Counsel for plaintiff also call our attention to the testimony of Mrs. Munn to the effect that Mrs. Strom told her the defendant was to take care of Carl, the plaintiff, and that she had stated, while still in the hospital—apparently in Denver—that she, deceased, wanted Mrs. Felton to pay the expenses of her illness, and that when everything was paid, defendant was to have her property. Without reference to the competency of the testimony, it does not appear the defendant agreed to it. In fact, if that was the thought of Mrs. Strom at that time, it is probable that it was abandoned when she borrowed $3,000 from the bank, and thought it would probably take care of all the expenses. We might say in passing that the warranty deed to defendant is subject to the $3,000 mortgage against it though it does not say so, and it does not appear in the record that the property is worth more than that, or worth more than the cost of the care actually given the deceased by defendant.

## FRAUDULENT CONVEYANCES.

Plaintiff claims and testified that he loaned Mrs. Strom, before their marriage, the sum of $1,000 and again in the sum of $800. There is perhaps some doubt raised in the record as to whether or not these claims are actually valid but for the purpose of this case we shall assume they were valid. The question is whether or not the conveyances in this case should be set aside for fraud on account of the inadequacy of the consideration. See §§ 5-204—5-206, W.C.S. 1945. We may mention the fact that this is not a suit on behalf of all creditors. 37 C.J.S. § 368, p. 1198.

It was held in the case of Rutherford v. Alyea, 54 N.J. Eq. 411, 34 A. 1078, that a creditor at large of a deceased person, who has not presented his claim to the personal representative under the statute, cannot maintain a bill in equity to set aside as fraudulent a conveyance of the decedent's lands. That is evidently on the theory that the primary duty to pay the indebtedness is on the estate of the deceased. The foregoing New Jersey case was followed in the case of South Camden Trust Co. of Camden v. Black, 110 N.J.Eq. 97, 159 A. 155. The rule so stated appears to be the general rule. See 37 C.J.S. § 311, p. 1160; 27 C.J. 732, 733. And so it is said in 24 Am.Jur. 308:

"It is generally held that a creditor may not have relief in equity until he has proved his claim or had it allowed in the usual way."

That was not done in this case. It is true that the Texas court seems to disagree, at least to come extent, with the foregoing rule. Markward v. Murrah, 138 Tex. 34, 156 S.W.2d 971, 138 A.L.R. 242. In that case, however, it was held that where no such claim is presented, it must be shown that the estate was insolvent. In this case that has not been shown and there is not a scintilla of evidence in the case as to whether or not the deceased left any property aside from what we have heretofore mentioned. We cannot accordingly overrule the judgment of the trial court by reason of the contention here discussed.

HOMESTEAD.

Counsel for appellant claim that plaintiff is entitled to a homestead in the west 60 feet in controversy here under the provisions of our statutes, and that the deed is void under the provisions of § 66-209, W.C.S. 1945, as amended. It may be noted from the pleadings heretofore set out that no such claim was made by plaintiff in the court below nor do we find that plaintiff

called attention, at least specifically, to this point in the court below. The general rule is that where no such issue was raised in the court below, it cannot be raised in the appellate court for the reason it would be unfair to raise questions in the appellate court which had not been raised in the lower court. Mercer v. Thorley, 48 Wyo. 141, 43 P.2d 692; Chittim v. Belle Fourche Bentonite Products Co., 60 Wyo. 236, 252, 149 P.2d 142; Gore v. John, 61 Wyo. 246, 260, 157 P.2d 552. While there are some exceptions to the rule, we do not think they can be applied in the case at bar. The property in question is apparently an apartment house, part of which was occupied by plaintiff and Mrs. Strom. So we do not know how far any homestead right would apply nor has that point been argued. When the conveyance was made to defendant, Mrs. Strom as well as the defendant asked plaintiff to leave the premises because he had no further right there. Plaintiff complied and now a year and a half or more after he abandoned the premises as a homestead, he now makes the claim as above mentioned. It has not been argued herein what effect such abandonment had. Under the circumstances we think we are constrained to apply the general rule above mentioned.

Counsel for plaintiff also claim that the plaintiff was entitled to homestead rights of $4,000 under the provisions of § 6-1504, W.C.S. 1945. That provision is contained in the probate code of this state and provides that the homestead and other exempt property shall be set off to a widow, widower, and children. This matter, too, was not raised in the trial court, and so we cannot consider it here. Whether or not plaintiff still has a remedy through the probate court need not be decided.

The title of the property mentioned in the quitclaim deed aforesaid needs special consideration. That property is described as follows:

"Thirty-six feet of Lot eight, in Block two hundred fifteen, directly east of the west sixty feet of said Lot 8 in Block two hundred fifteen, Old Town, City of Laramie, County of Albany, Wyoming."

As heretofore stated the court made a general finding in favor of the defendant and against the plaintiff. But in view of the pleadings herein, it leaves uncertain just what disposition was made of the property just described. Judging from the brief of defendant herein she claims to be the absolute owner of the property. So we must consider what the situation herein is. The plaintiff in paragraph 3 of the first cause of action alleged:

"* * * that said Ina R. Strom and the plaintiff were the owners as tenants by the entirety of the center 36 feet east of the said west 66 feet of the same Lot and Block above set out."

The defendant in her answer admitted that allegation. If as a matter of fact the allegation in the amended petition is true and the property is in fact held by the entirety, the plaintiff became the absolute owner at the time of the death of Ina R. Strom. 26 Am.Jur. 706; Annotation, 63 A.L.R. 236. It is true that in the amended petition in paragraph 5 of the first cause of action the plaintiff alleged:

"That said Anna K. Felton is in possession of said land, claiming to be the exclusive owner thereof, and refuses to permit this plaintiff to have any part thereof, and to give or share with the plaintiff the rents or profits, or to permit this plaintiff to have access thereto."

The defendant in answer to this paragraph stated:

"Defendant in answer to paragraph 5 of said amended petition's first cause of action admits that she is in

possession of said lands and claims to be the owner thereof, admits defendant refuses to permit plaintiff to have any part of said lands, admits she refuses to share with plaintiff the rents, and admits she refuses plaintiff access thereto, further admits that defendant has received rents from said property."

These allegations perhaps might be construed as a denial of plaintiff's petition referring to the property as property by the entirety. And in that event perhaps it might be said that the answer of the defendant contains both an admission as well as a denial. However, if that is so then the following rule obtains, stated in 49 C.J. 288, follows:

"When a defense contains both an admission and a denial respecting the same fact, the admission will prevail."

See also 71 C.J.S. § 160, p. 330. So we can consider only the admission that the plaintiff and Mrs. Strom were owners by the entirety of the property herein last described. However, it is contended by counsel for the defendant that the allegation in the amended petition is purely a legal conclusion and accordingly is of no effect, and in the absence of proof in the record that the allegation in the petition is correct, the judgment in favor of the defendant gave her title to the property. Counsel cite some cases relating to the effect of legal conclusions. As we read them they do not touch a situation such as we confront in the case at bar. It would be harsh rule to give the defendant title to the property here discussed merely for the reason of a technical rule of construction that the allegation in the petition is a legal conclusion, and, when as in the case at bar, the truth of this legal conclusion is admitted. We accordingly cannot hold that the defendant is the owner of the property here in question but must hold that the plaintiff is the owner

thereof and the trial court is directed to amend the judgment herein to that effect, and to direct defendant to account to plaintiff for all rents and profits therefrom, if any.

The judgment as to the west 60 feet of the property in controversy is affirmed. All the costs in this court will be assessed against plaintiff for not strictly complying with rule 37.

Affirmed in part.

Modified in part.

Harnsberger, J., and Pearson, D. J., concur.