R. M. OLDS, Appellant (Defendant below),

v.

Jack W. HOSFORD, Appellee (Plaintiff below),

J. H. Keil (Third party defendant below).

J. H. KEIL, Appellant (Third party defendant below),

v.

Jack W. HOSFORD, Appellee (Plaintiff below),

R. M. Olds (Defendant and third party plaintiff below).

Nos. 2918, 2919.

Supreme Court of Wyoming.

Aug. 30, 1960.

William H. Brown, of Brown, Healy, Drew, Apostolos & Barton, Casper, for R. M. Olds.

Edward E. Murane, of Murane, Bostwick & McDaniel, Casper, for Jack W. Hosford.

Robert J. Murphy, of Mahoney, Murphy & Emery, Casper, for J. H. Keil.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

The following is our understanding of the capacities and relationships of the parties and several interests connected with this litigation.

1. Lloyd's of London places with its members coverages of insurance.

2. Underwriters are those members of the group at Lloyd's who elect to participate collectively in carrying an insurance risk.

3. H. J. Symons and Company was a Lloyd broker in London who placed the insurance coverage in this case with certain underwriter-members at Lloyd's.

4. Pierce, Miller & Company were the representatives in the United States of the underwriters at Lloyd's who carried the insurance upon the rig in this case, and as such representatives issued the underwriters' insurance policy to Newcastle Drilling Company, the owner of the rig destroyed by fire.

5. Arnold R. Owen was the adjuster employed by the underwriters, through Pierce, Miller & Company, to adjust in behalf of the underwriters the loss claims of Newcastle Drilling Company.

6. The third-party defendant J. H. Keil was the purchaser of the salvage from the underwriters through their representative, the adjuster Owen.

7. Defendant R. M. Olds, a drilling contractor, purchased the salvage from Keil.

8. Plaintiff Jack W. Hosford is an attorney at law, who represented H. J. Symons and Company and Pierce, Miller & Company, and who took assignment of the salvage from H. J. Symons and Company, wherein it was stated the Symons Company was acting as the representative of the underwriters.

Certain underwriters at Lloyd's of London, through their representative in the United States, Pierce, Miller & Company of Denver, insured an oil drilling rig owned by the Newcastle Drilling Company against fire loss. When the rig was damaged by fire, Pierce, Miller & Company, acting as representatives of the insuring underwriters at Lloyd's, employed Arnold R. Owen, doing business as Owen Adjustment Company, to adjust the loss. As a result of Owen's services, the underwriters, through their representative Pierce, Miller & Company, paid the Newcastle Drilling Company the full amount of the claim submitted by its proof of loss, the payment being transmitted through the adjuster Owen.

Thereupon Owen, as the underwriters' representative, took possession of the salvage from the burned property and secured bids and offered the salvage for sale. This resulted in Owen's selling the salvage for the sum of $14,917 to the third-party defendant J. H. Keil. Owen gave Keil possession of the property and by bill of sale, dated May 21, 1954, warranted to Keil the title thereby transferred. The bill of sale was signed by Owen as "Representative For: Underwriters at Lloyd's of London through H. J. Symons and Company, 55 Bishopsgate, London E. C. 2. England."

Thereafter on November 1, 1954, Keil leased the salvage to defendant Olds, and on February 28, 1955, Keil and Olds executed a contract of sale whereby Keil was to sell the salvage to Olds for $12,750, the purchase price to be paid in installments. Upon completion of the payments, Keil gave Olds his bill of sale for the salvage, warranting title and dated March 3, 1956.

Owen did not remit to the underwriters the purchase money received by him from the sale of the rig to Keil, and on September 20, 1955, the broker in London, H. J. Symons and Company, gave the plaintiff Jack W. Hosford an assignment which set forth that Symons and Company, as representatives of the underwriters at Lloyd's, in consideration of $10 and other good and valuable consideration, sold and assigned the salvage to the plaintiff Hosford without, however, making any warranty of title.

Hosford then made demand upon Olds for possession of the salvage, which by that time had lost its identity by reason of major repairs and commingling with other materials, and upon Olds' refusing to give up his possession, Hosford brought a statutory proceeding in replevin against Olds.

In the course of the action, the local sheriff, acting under a purported order of delivery, took from Olds the possession of the salvage, but after three days, by direc-

-tion of the plaintiff Hosford, returned the same to Olds.

Defendant Olds denied Hosford's claim ·of ownership of the salvage and right to its possession, setting forth his own title under his bill of sale from Keil, and cross-petitioned against Hosford for damages suffered by reason of being deprived of possession of the salvage during the three-day period it was taken into the custody and possession of the sheriff, and made claim for recovery of $2,500 attorneys' fees. On petition of Olds, setting up the warranty contained in the bill of sale upon which he based his title, Keil was joined as a third-party defendant. Keil likewise denied the ·claim of plaintiff Hosford; set up the title .and possession received by virtue of the bill of sale containing warranty given him by Owen, the adjuster; and claimed damages against plaintiff Hosford. The damage claim was asserted on the theory that under the warranty in the bill of sale given Keil by Owen, the underwriters, as Owen's prin-·cipal, had assumed the obligation of defending Keil's title to the salvage, and, therefore, plaintiff Hosford, as assignee of the underwriters, was bound to defend Keil's title. Additionally, by cross-complaint, Keil claimed attorneys' fees in the sum of $2,500. The trial of the cause was to a jury, but when the court ruled that attorneys' fees were not recoverable by either defendant Olds or the third-party defendant Keil, the parties stipulated that the rea-·sonable value of the attorneys' fees claimed by Olds was $5,000 and the reasonable value of attorneys' fees claimed by third-party defendant Keil was $2,000. This stipulation was made on the assumption that the court's .adverse ruling on the question on the recoverability of attorneys' fees would be appealed to the Supreme Court. This ruling .of the court disposed of the question of attorneys' fees by holding that as a matter of law such fees were not recoverable.

The jury returned a verdict against plaintiff Hosford, assessing damages against him and in favor of Olds in the full sum claimed of $3,500. The court entered its judgment that defendant Olds was not entitled to recover any amount of attorneys' fees against plaintiff, but by reason of the stipulation of the parties, if, upon appeal, it was determined that reasonable attorneys' fees are recoverable by a successful defendant against the unsuccessful plaintiff in a replevin action, then defendant Olds should be entitled to have a further and additional recovery in the sum of $5,000 for attorneys' fees, the amount stipulated and agreed to as being reasonable and proper, if attorneys' fees are allowable at all. The court further decreed that the third-party defendant Keil was not entitled to recovery of attorneys' fees against the plaintiff as damages resulting from breach of the warranty in the bill of sale from plaintiff's predecessor in interest to Keil, but if, on appeal, it was determined that attorneys' fees are recoverable by a successful third-party defendant as part of damages consequent upon a breach of the warranty of title contained in the bill of sale from plaintiff's predecessor, that in that event the third-party defendant should be entitled to and have judgment against plaintiff in the sum of $2,000, the sum agreed by all parties to be the reasonable and proper amount of attorneys' fees recoverable by the third-party defendant from the plaintiff, if recoverable at all.

The court further gave judgment against the plaintiff and in favor of the defendant Olds and awarded Olds damages in the sum of $3,500, plus cost of suit, in accordance with the jury's verdict.

Both defendant Olds and the third-party defendant· Keil have appealed from that portion of the court's judgment which denied them recovery of attorneys' fees. In consequence, we are asked to decide (1) whether a defendant who is successful in a statutory action in replevin is entitled to recover his attorneys' fees from the plaintiff, as an item of damage, and (2) whether a third-party defendant who successfully defends the title he has warranted and upon which the defendant relied is entitled to recover attorneys' fees from the plaintiff.

Although there was some quibble in the testimony as to whether the source of the

underwriters' title rested upon a so-called "subrogation receipt", which the evidence showed never existed, it was ultimately disclosed that the underwriters' title actually resulted from the insured's proof of loss and the underwriters' payment of that claim in full.

It is undeniable that, generally, there can be no recovery of attorneys' fees as damages by the prevailing party in replevin. Yellowstone Sheep Co. v. Ellis, 55 Wyo. 63, 96 P.2d 895; Annotation, 60 A.L.R.2d 945; 77 C.J.S. Replevin § 282, pp. 206–207. However, these same authorities point out that where there is fraud, malice, oppression or wilful wrong in the bringing of the action there is an exception to the general rule, and attorneys' fees have been allowed. American Jurisprudence does not deal with the question as directly, but does say at 46 Am.Jur., Replevin, § 179, p. 94, "There is a conflict among the authorities on the question of the allowance of attorneys' fees as an element of damages in actions on replevin bonds," and opines "this conflict is unquestionably due to the different language used in different bonds." But it is also noted, "Some courts take the view that a successful defendant may recover a reasonable amount of attorneys' fees incurred by him in defending the replevin action," citing Wilson Motor Co. v. Dunn, 129 Okl. 211, 264 P. 194, 57 A.L.R. 17, which merely affirmed a trial court's judgment that awarded such fees. In the same volume, it is pointed out that:

"At common law, as well as according to the great weight of modern decisions, exemplary or punitive damages are properly allowed in cases where there have been particular circumstances of fraud, oppression, or wrong in the taking or the detention of the property. * * *" 46 Am.Jur., Replevin, § 139, p. 75.

And in 15 Am.Jur., Damages, § 145, p. 553, it is said:

"* * * According to other courts, counsel fees and expenses of litigation are to be taken into consideration in estimating the exemplary or punitive damages. * * *"

Thus we find there is substantial agreement among the cited authorities that there is an exception to the rule against recovery of attorneys' fees where there is fraud, malice, oppression, or wilful wrong in the bringing of an action in replevin.

It is clear that all parties in this litigation base their respective claims upon a title secured from the underwriters. Hosford's claim, under the September 20, 1955, assignment, assumed the broker Symons had authority to dispose of the interest of the underwriters in the fire salvage. Keil and Olds maintain that Owen, by virtue of Pierce, Miller and Company having employed him to adjust the fire loss, was, by custom, also authorized to dispose of the underwriters' interest in the salvage, and, therefore, Owen's bill of sale of May 21, 1954, with warranty, transferred to Keil all the interest of the underwriters in the salvage, thus leaving nothing of either title or right to possession in the underwriters which Symons could thereafter assign. The trial court evidently agreed with this position, but left for our decision whether, under all the circumstances present, the successful defendants can recover the attorneys' fees they claim. If such a recovery is permitted, it must be because Hosford brought this replevin action fraudulently, maliciously, or with wilful intent to wrong Olds.

Although evidence of the authority of Symons to do more than sell the insurance risk to underwriters at Lloyd's is somewhat sketchy, we may, for the purpose of discussion, assume that Symons did have authority to dispose of the salvage. However, there is evidence that Symons was cognizant of, and at least acquiesced in, the employment of Owen to adjust the loss, and there was evidence from plaintiff's own witness that there was no limitation placed upon Owen's authority. There was considerable evidence that it was the custom in the insurance business in the locale that an adjuster proceeds to sell the salvage for the principal, when it is not retained by the

insured as part of the loss settlement, and other evidence might warrant a fair inference that Hosford, Pierce, Miller and Company, and even Symons, were aware of that custom and of Owen's efforts, not merely to secure bids for the sale of the salvage, but to make the sale itself. The law in this respect is clearly set forth in 2 Am.Jur., Agency, § 113, p. 94, as follows:

"* * * If the agent is not expressly authorized to sell, he may, in the absence of an agreement to the contrary, have such power by implication from the authority to conduct a transaction for the principal, if such sale is incidental to such transaction, usually accompanies it, or is reasonably necessary in accomplishing it. However, incidental or implied authority to sell can exist only when the existence of such power comports with usual trade or business custom. * * *"

The same text, after pointing out that a mere possession of personal property does not confer upon the agent an ostensible authority to sell, says:

"* * * If, however, the principal has, by his own voluntary act or consent, given to another such evidence of the agent's right to sell his goods as, according to the custom of trade or common understanding of the world, usually accompanies the authority of disposal, or has given the external indicia of the right to dispose of his property, the person in possession will be deemed to have authority to sell. In other words, when an owner of property clothes another with apparent title or power of disposition, third persons, induced to deal with him, will be protected. The fact that the possessor of such external indicia of power may abuse the confidence of his principal does not prevent a sale to a fair purchaser from divesting the principal of title." 2 Am.Jur., Agency, § 114, pp. 95–96.

Another applicable rule of agency is also set forth in 2 Am.Jur., Agency, § 88, p. 72:

"To effectuate an authority conferred, an agent is permitted to adopt any recognized usage or mode of dealing,—that is to say, an agent has implied authority from his principal to do business in his behalf in accordance with the general custom and usage in that business. The fact that the principal is not aware of the exact character of the custom or usage is not material; it is sufficient that he has notice that usages of such nature may exist. * * *"

The testimony of one of plaintiff's witnesses, who was an employee of Pierce, Miller and Company and familiar with Owen's activities in adjusting the loss, that Owen was not empowered to make a sale without express direction is to be considered together with the correspondence in evidence which may be interpreted as belying that statement and also with the further testimony of the same witness when he stated, "Owen was supposed to be selling it," i. e., the salvage. Which of these conflicting testimonies and evidence is to be given credence, and whether the attorney-plaintiff, his predecessors in interest and the companies engaged in the fire insurance business he represented, were unaware of customs prevailing in the very areas in which they were accepting risks, are both matters bearing upon the question at hand. So it must be determined whether it was within the knowledge of either or both Symons and Hosford that Owen was vested with power and authority to alienate the title and give the possession of the salvage to Keil.

The admission of plaintiff Hosford that he had learned on approximately August 26, 1955, that Owen already had sold the salvage, prior to the time Hosford received the assignment from Symons on September 20, 1955, coupled with the evidence that Hosford first proceeded to collect the proceeds of the sale from Owen to Keil, tend to show that Hosford was well aware the assignment he procured from Symons was worthless to place with him either title or right to possession of the salvage; and in-

dicate at the time he took the assignment he knew that a valid title had passed from the underwriters, the principal of his assignor Symons, to Keil. Whether such evidence robbed the purported assignment from Symons to Hosford of any vestige of color of right or color of title, and besmirched the replevin action as an attempt to defraud, and whether the action is without merit, especially when brought by one who professes to know the law, will largely determine if there was a wilful purpose to wrong and oppress the party against whom the action is brought.

In consequence, it may be that the circumstances present in this case will bring it well within the exception to the general rule denying recovery of attorneys' fees.

As the defendant points out in his brief, the issue now before us has never before been squarely presented nor passed upon by this court, but in the replevin action of Knight v. Beckwith Commercial Co., 6 Wyo. 500, 507, 46 P. 1094, 1096, where recovery of attorneys' fees was discussed, this court noted that the case then before it was not one in which there was any such outrage or bad faith as would authorize exemplary damages including counsel fees. This seems to give recognition that had there been outrage or bad faith that would have authorized the court to grant recovery of attorneys' fees.

In addition to citations we have already noted, there are other authorities which are instructive and persuasive.

The analysis and summary of decisions upon the subject of the "effect of malice, fraud, or oppression; exemplary damages," as entitling a successful defendant to recover attorneys' fees, given in Annotation, 60 A.L.R.2d 945, 952, is:

> "Where plaintiff, in bringing a replevin action, acts maliciously and without probable cause, defendant may recover a fee for the services of his attorney in the defense of the action, even though such a fee is not recoverable in the absence of malice, fraud, or oppression."

Cobbey on Replevin, 2d ed., § 976, p. 537, says:

> "If the suing out of the writ was wilful and malicious, without color of right, to this should be added any expense or loss of time to which the defendant has been put in defending his possession, including a reasonable sum for necessary attorneys' fees—making full and complete compensation."

We find the pronouncement and conclusion of the court in Smith Chevrolet Co. v. Finch, 150 Miss. 854, 117 So. 258, 259, to be entirely reasonable and correct in saying:

> "There was ample evidence tending to show that the suing out of the writ of replevin by appellant was a wilful wrong on its part—an act of fraud, malice, or oppression. There was no evidence whatever to show probable grounds for replevin. In such a case, the defendant is entitled to have submitted to the jury the question of whether he shall recover, as punitive damages, attorney's fees, loss of time, and expenses of attending court. * * * The act of the court in submitting that question to the jury is complained of by appellant. Under the authorities cited, the complaint is without merit."

In contesting Keil's right to recover his attorneys' fees on the ground that Hosford is bound to defend his predecessor's warranty of title, Hosford says that inasmuch as there was an unappealed judgment in favor of Olds, " * * * there can be no damages for breach of title (sic) where there is no breach." If this confusing statement means, as we understand it to mean, that because there was no failure of Olds' title there was no breach of warranty, the statement is incorrect. It is true that Olds' title, stemming from Keil's title, did not fail, but this does not necessarily imply the underwriters' warranty to *defend* Keil's title was not breached. If we assume that Hosford was burdened with fulfillment of the underwriters' warranty to defend Keil's title, it might be that Hosford's own attack

upon the very title he was obligated to defend was a breach of the warranty. However, we need not decide the point, as it necessarily follows that if Hosford's bringing the replevin action against Olds was fraudulent, wilfully wrong, or oppressive to Olds, the same would be true as to Keil. This is because under his warranty to Olds, Keil was duty-bound to come to Olds' defense. It is no excuse for Hosford to claim, as he evidently does, that because of the lapse of time between his bringing of the suit and the interpleading of Keil, the merit of Olds' defense could have been ascertained. No matter how well Olds might have defended himself, that did not lessen the burden placed upon Keil by his warranty nor relieve him of the duty to defend Olds' title. Keil was not compelled to sit idly by and risk an adverse determination which could result due to his own inattention and thereby rendering him liable to Olds.

Making extended reference to Finance Corporation of Wyoming v. Commercial Credit Co., 41 Wyo. 198, 283 P. 1100, Hosford contends that even should there be a basis for awarding punitive or exemplary damages in this case, defendants cannot recover attorneys' fees as a part of such damages. In the replevin action of Finance Corporation, supra, the lower court had given an alternative judgment that plaintiff have possession, or in lieu thereof plaintiff recover $500 as the value of the personal property sought, and in addition $250 as damages, attorneys' fees and expenses of repossession. This court reversed, saying the alternative judgment was wholly improper; that there was no proof whatsoever plaintiff had suffered any damages; and then said that attorneys' fees *in such a case* cannot be allowed, citing Knight v. Beckwith Commercial Co., 6 Wyo. 500, 46 P. 1094.

As has previously been noted, the Knight replevin case, 6 Wyo. 500, 507, 46 P. 1094, 1096, merely held the detention of the property after demand "was not accompanied by any such outrage or bad faith as would authorize exemplary damages." We

do not understand the court in the Finance Corporation of Wyoming case, supra, did more than determine that the facts in the case before it did not amount to outrage or bad faith. On the other hand, by the decisions in the Finance Corporation and Knight cases, this court had indicated the right to recover attorneys' fees turns upon whether there was outrage, bad faith, or as other authorities put it, fraud, oppression, or a wilful purpose to do wrong, rather than holding, as appellee claims, that attorneys' fees are not recoverable even where punitive or exemplary damages are awarded.

The stipulation as to the reasonable value of attorneys' fees is insufficient to enable us to make final disposition of this case, because it still leaves unsolved this primary question which alone determines the right to recover attorneys' fees.

Nor does the presence of the entire record before us warrant our deciding that primary issue in the first instance. However, because we do have that record here, and have of necessity been required to study it carefully in its entirety, we feel justified in pointing out that there is sufficient disputed evidence, pro and con, on the question of outrage, bad faith, fraud, malice, or wilful wrong, to require the trial court's finding the fact, which if affirmative, will establish the exception to the general rule, and if negative will require the application of the general rule.

But appellee's counsel insists that even assuming the fees may be awarded under the exception to the rule, it would be improper to allow them in the case now before us because the question of malice, fraud, oppression or wilful wrong was not submitted to the trier of fact in the trial court. We do not disagree with the authorities submitted in support of the contention, and, in fact, this court has itself so held. Strom v. Felton, 76 Wyo. 370, 302 P.2d 917. But the record does not support the premise that the question was not properly submitted to the trial court. True, the issue was not placed before the jury, the trier of fact in this case, but that

failure was not due to the defendants' fault, but to the adverse ruling of the trial court in prematurely deciding, as it were, that under no circumstances could the attorneys' fees be recovered. The recitation prefacing the stipulation of the parties respecting the reasonable value of the claimed attorneys' fees, and which stipulation was approved and adopted by the court, stated explicitly that both the plaintiff and the defendants had offered cases and authorities on the question of recoverability of attorneys' fees by the successful party. The failure to enumerate or specify just what these cases and authorities showed does not incline us to speculate they did not touch upon the exception to the general rule. In fact when the court's reason for denying attorneys' fees was stated to be that the "identical factual situation" had not been specifically ruled upon by this court, it seems quite apparent that the nature of the factual situation upon which defendants are relying had been presented to the trial court.

■ We feel we are justified in inviting attention that, under circumstances somewhat paralleling those present in this case, the adjuster might have sold the salvage to Keil and then, let us say, Keil sold to a man named Jones, and Jones to Smith, and Smith to Green, and so on, the title passing through a dozen hands, finally resting in Olds with all the instruments of transfer containing warranty of title. In such a case it clearly would be unconscionable to say that each of the mesne title holders should separately be entitled to an attorneys' fee in an amount deemed to be a reasonable fee for the defense of the entire action. In consequence, where the circumstances of the case make the award of attorneys' fees proper, an overall, reasonable attorneys' fee should be first determined, followed by such apportionment of that fee among the several defending interests as is found to be just and equitable under all circumstances. In this case, where the parties stipulated that the reasonable value of defendant's attorneys' fees should be one amount and the reasonable

value of the third-party defendant's attorneys' fees should be another amount, while possibly evidencing their purpose to make just such an apportionment, we do not feel justified in making that assumption. Furthermore, the way in which the entire question relative to the recovery of attorneys' fees was handled leaves us very unsure that the stipulation of the parties, even though approved by the court, was fairly entered into, as it is now obvious all parties were misapprehending the law which requires the primary fact be determined by the trier of fact. Because of this we feel it would be unjust and inequitable if the parties were not permitted to reconsider the reasonable value of the attorneys' fees claimed. In consequence, the stipulation is set aside.

■ We must also call attention that in no event may a judgment be entered for attorneys' fees in an amount larger than the sums prayed for by the respective defendants. In other words, neither of the defendants may be allowed a recovery for more than the $2,500 attorneys' fees each had sought.

The trial court erred in ruling attorneys' fees were not recoverable without even having considered whether the evidence disclosed any such outrage, bad faith, fraud, oppression, or wilful wrong as would bring this case within the exception to the general rule prohibiting such recovery in a replevin action.

In conclusion, we hold that while the general rule is that attorneys' fees are not ordinarily recoverable from the plaintiff by successful defendants in a replevin action, there is an exception to the rule which permits such recovery in cases where upon evidence the fact is found that plaintiff, in bringing the suit, was acting fraudulently, in bad faith, outrageously, oppressively, or in wilful wrong of the defendants.

Therefore, the judgment of the district court denying to defendants recovery of their attorneys' fees in accordance with their respective pleading is reversed, vacated, and set aside. The case is remanded

to the trial court for determination by the trier of fact upon the testimony and evidence heretofore adduced and under proper instruction of the court, whether there was either such outrage, bad faith, fraud, oppression, or wilful wrong against the defendant and the third-party defendant on the part of the plaintiff in bringing the replevin action against the defendant Olds as brings this case within the exception to the general rule denying recovery. On the question of the value of attorneys' fees, the court shall receive such further and additional testimony and evidence as properly bears upon the reasonable value of such attorneys' fees, unless the parties themselves, with the approval of the court, elect to further stipulate such reasonable value in the light of what is here said. If an affirmative finding on the question of the recoverability of attorneys' fees is made, the trier of fact shall also determine the amounts of such attorneys' fees to be recovered within the limits herein specified. Upon such determinations being made the trial court shall render its supplemental judgment respecting attorneys' fees in accordance with such finding.

Reversed and remanded with directions.