Winifred B. BALDWIN, Individually, and as Administratrix of the Estate of James Birchby, deceased, and Martha B. Boyden, Appellants (Plaintiffs below),

v.

James C. BIRCHBY and Edward E. Birchby, Appellees (Defendants below).

No. 2895.

Supreme Court of Wyoming.

Nov. 17, 1959.

William D. Redle, Austin T. Redle, Henry A. Burgess and Bruce Badley, Sheridan, for appellant.

R. G. Diefenderfer, Sheridan, for appellees.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

This is an appeal by plaintiffs below from the judgment entered which found generally in favor of defendants and decreed that plaintiffs take nothing by their action.

The contesting parties are the four children, two daughters and two sons, of James Birchby, Sr., now deceased, and this suit was brought by the daughters against the sons to cancel and set aside deeds executed by the father during his lifetime conveying his properties to the sons; to require the sons to reconvey a one-half interest in the properties so conveyed unto the daughters; to account for rents and profits received from those properties, paying over all of the same to the administratrix of the deceased's estate, and account for stocks, bonds, hotel property, rents, income, cash, paper and documents of the deceased coming into their possession from the decedent.

The deeds involved are as follows: (1) A warranty deed dated January 2, 1956, conveying business and hotel property con-

sisting of certain lots in the city of Sheridan, Wyoming, which, with improvements thereon, was alleged to be of the value of $150,000. (2) A warranty deed dated March 9, 1955, conveying a house and a business property consisting of other lots in Sheridan, Wyoming, which, with improvements thereon, was alleged to be of the value of $62,000.

Defendants admit that at the time the deeds were executed the deceased was in the neighborhood of 95 or 96 years of age, and that they occupied positions of trust and confidence with their father. Plaintiffs charge that the deceased was senile, ill, hard of hearing, of unsound mind, incapable of transacting business or comprehending the nature and effect of signing the deeds; that the sons took advantage of their close and intimate relations with their father and procured him to execute the deeds with the intention of cheating and defrauding their sisters.

The testimony and evidence is voluminous and, although it is somewhat conflicting with respect to the mental capacity of deceased when he executed the deeds, appellants seem also to rely upon the legal presumption against the validity of a gift from parent to child where their business relations placed the child in a position of trust and confidence with the parent, and which places the burden upon the child to refute the presumption of undue influence. See 39 Am.Jur., Parent and Child, § 100, pp. 745, 746, and authorities there cited. Appellants likewise stress the highly fiduciary nature of the relationship of one of the sons who is a lawyer and who performed at least some legal service for deceased, including preparation of the questioned deed, as bearing upon the charge of fraud and the exercise of undue influence in obtaining the deeds. See 5 Am.Jur., Attorneys at Law, § 45, p. 285.

On the other hand, the record is replete with testimony of numbers of witnesses which tended to refute and rebut those presumptions. This evidence may be summarized, substantially in their own words, by those witnesses who testified as follows:

During the period the deeds were executed, deceased was determined in his way of doing things and not easily influenced; he could not be influenced; he had a mind of his own; he could not be talked into doing anything he did not want to do; deceased kind of ran the show; the sons were just taking orders from him; he was a strong-minded man, he had his own opinions and they were not easily changed; both sons did as deceased told them; a person could not talk him out of anything when he made up his mind; deceased told others what he had done with his property and told what his intentions were; deceased instructed his son, the lawyer, to draw up the deed; when the deed was prepared, deceased read and signed it; in late 1955 or early 1956, deed to hotel was prepared by witness at deceased's direction, conveying 50 per cent each to sons; deceased insisted the deed be made that way; deed was not prepared at the instance of either son; it was entirely the act of deceased; one of the questioned deeds bears date of January 2, 1956, and deceased had already given the sons the Sportsman's Bar building, the property covered by the other deed; both deeds were executed upon deceased's instructions and were entirely the act of deceased; one deed was signed and acknowledged right after Christmas 1955, but bore date January 2, 1956, because deceased had already given the sons the Sportsman's Bar building and house in 1955, and deceased did not want the sons to pay too much gift taxes; the witness prepared the deeds executed by deceased at his direction; neither of the sons suggested those deeds be executed; on July 11, 1955, the deceased's condition was not weak; on the afternoon of the morning deceased executed it, deceased told witness to file the deed; deceased first gave the deed to his sons right after he signed it, but they gave it back to him and deceased looked at it and studied it; deceased was alert until the time of his death; the lawyer son never influenced his father; deceased remained keen to the day of death; nobody ever dictated to deceased to the date of his death; he was strong minded;

deceased was an old man in 1955 and 1956 with an alert mind and played-out body, but with no changes in mental capacity up to the time just before his death, except maybe he was a little more quiet; he knew exactly what he was saying and doing; before deeds were executed, when alone with a witness, deceased said his intention was to give the hotel to his son, James C. Birchby, and the ranch to his son, Edward Birchby; later in January or February 1955, deceased said the boys were going to get the property anyway, so it made no difference to him how certain income was applied; deceased also said he was not going to draw a will, that he did not need one; that he was going to give all his property away anyway; in December 1955, deceased told how happy and proud he was of his sons and that he was going to transfer the hotel over to the boys; outside of his age, deceased was not any different from what he had been previously and in those previous years deceased had a mind of his own and would have been quite hard to influence; in 1955 deceased was just as good mentally as he was 20 years before; he was a good, prudent businessman and witness wished he was half as smart as deceased was in 1956; deceased said the property would be in the hands of the boys and it would be up to them; anyway, if they went broke that was their own fault; deceased said he had turned everything over to his sons and mentioned it a time or two; in 1952 deceased said he was going to leave the ranch to Ed and the hotel to Jim, his sons; deceased also mentioned he was going to give the boys this place or that place and then in a few days he said, "Well, I give the boys a deed"; and he wanted the boys to have it.

One of defendants' witnesses was a doctor, and when cross-examined by plaintiffs, testified that on the average one who gets to be 95 years of age is not more susceptible to suggestion and influence than one who is 50—it is the other way around; the younger people are more apt to be influenced; a person who gets to be 96 years of age is not more apt to be influenced by the power of suggestion or to become tired (of resisting suggestion) than a person of 45; deceased was always very clear mentally, alert, and his conversation was always logical; he still talked business almost to the very last, until he was running a high fever when he had pneumonia, his final illness.

A letter written by the deceased said he had told prospective purchasers of the hotel property that he "was saving the Birchby property for the boys to come back to after the war."

Other evidence shows that deeds had also been made to deceased's other children, and there had been a bitter quarrel between the plaintiff Winifred Birchby Baldwin and the deceased, as a result of which the deceased disowned her and that he never forgave her to his dying day.

Both the sons also testified and affirmatively stated they had never attempted to influence their father to execute the deeds to them.

Appellants have not made clear in just what particulars the lower court erred. They pose several questions and argue in favor of answers which are favorable to their position. The first two inquire if a confidential or fiduciary relationship existed between the father and the sons. The third asks if such confidential relationship shifted the burden of proof to the sons to show the fairness and good faith of the transaction. The fourth inquires if the appellees sustained their burden of proof by showing the transactions were made in fairness and good faith without fraud. The fifth is difficult to understand. It suggests error was committed in the trial court's failing to grant relief on the first four causes of action while granting relief to the appellants on the fifth cause of action.

■ A complete answer to the first three questions is found in the appellees' admission that there was a confidential relationship between the father and the two sons. As to the third query, we agree that the burden of proof was upon the sons to show their fairness and good faith respecting

the deceased's execution of the deeds. The fourth inquiry is the only one which directly challenges the judgment entered by the trial court.

In view of the appellees' admission of the confidential relationship, the issue before us is whether the evidence adduced before the trial court was sufficient to overcome the legal presumption arising from that confidential relationship. Our resume of the substance of testimony and evidence favorable to appellees, and which the court was entitled to consider and believe, seems to be strong and convincing, and certainly was sufficient and substantial enough to warrant the judgment which carries with it the finding there was neither fraud nor undue influence practiced by the defendants upon their father. Similarly, the evidence is unusually clear and convincing that, at the times he executed the deeds, deceased was a gentleman who, despite his advanced years and physical failing, was remarkably alert and acute in his mind and capable of exercising his own, prudent, uninfluenced judgment in all matters of business. While in this case, as in all others, we would not substitute our judgment for that of the trial court, our judgment here coincides with that of the trier of fact.

Appellants' last inquiry suggests the court committed error in failing to grant relief to the appellants on the first four causes of action because it granted relief to the appellants on the fifth cause of action. It is erroneous to assume the court granted relief to appellants on their fifth cause of action. A careful and studied examination of the judgment discloses the court merely noted that the issues covered by the fifth cause of action had been adjudicated and determined by a judgment entered in another civil cause, and the fifth cause of action, like the other four, was dismissed. This does not amount to granting relief to the appellants on their fifth cause of action.

The only remaining matter to be considered is appellees' motion to dismiss the appeal because of an alleged failure to comply with Rule 12(b) of this court. Rule 12(b), Rules of the Supreme Court of Wyoming, specifies what shall be set forth in appellant's statement of the case. The motion is based on the appellees' contention that appellants' statement of the case did not contain essential facts which are alleged to have been established by evidence favorable to the appellees. Rule 12(b) itself provides a remedy to the appellee in the following language:

"* * * If the appellee disagrees with the statement of the case by appellant, he shall set forth in his brief in a supplemental statement each correction or addition which he desires to make or considers material; * * *."

Nowhere does the rule say the appeal shall be dismissed because an incomplete or imperfect statement of the case is not made by appellant.

From what has been said, we conclude that the issue before the trial court was whether or not the legal presumption growing out of the relationship between the father and sons in this case had been overcome by sufficient evidence to justify the court in making and entering its judgment in favor of the defendants and against the plaintiffs. We find there was sufficient substantial evidence to justify the judgment entered and the trial court did not commit error.

Affirmed.