**DAHNKEN, INC. OF SALT LAKE CITY a Utah Corporation, Plaintiff and Respondent,**

v.

**Harold WILMARTH, and H. Carlton Davis, aka Herbert C. Davis, Defendants and Appellants.**

No. 19406.

Supreme Court of Utah.

Sept. 30, 1986.

Vaughn W. North, Terry M. Crellin, Sandy, for defendants and appellants.

Verden E. Bettilyon, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

The defendant, Harold Wilmarth, contests the judgment of the district court which held an assignment of a real estate contract by H.C. Davis to Davis' stepfather, Harold Wilmarth, to be a fraudulent conveyance and therefore void under the Utah Fraudulent Conveyance Act.[1] Wilmarth alleges three errors by the trial court: (1) that the evidence did not support the trial court's finding that the assignment was fraudulent pursuant to U.C.A., 1953, § 25-1-4 (1984 ed.) of the Utah Fraudulent Conveyance Act because it was made without fair consideration,[2] (2) that the trial court erred in refusing to admit as exhibits checks written by Wilmarth to various business enterprises, and (3) that the evidence does not support the trial court's finding that the assignment was fraudulent pursuant to § 25-1-7 [3] of the Act because it was made with actual intent to hinder, delay, or defraud Davis' creditors. We find Wilmarth's claims on appeal to be without merit and affirm.

H.C. Davis, Wilmarth's stepson, is a business entrepreneur who, over the years, has tried to start numerous different business-es. From approximately 1968 through 1977, Wilmarth advanced money to these businesses. On March 23, 1981, Davis entered into a uniform real estate contract to purchase a $250,000 residence in Bountiful, Utah. Approximately six months after he entered into the contract, Davis contacted the real estate agent with whom he had dealt when purchasing the property and said, according to the real estate agent's testimony, "I need to get the property out of my name." The real estate agent also testified that although Davis never specifically stated the reason for the assignment, Davis mentioned several times that he owed Wilmarth money and would like to provide him with security for the debt.

Davis assigned the contract November 2, 1981, to Wilmarth, and the assignment was recorded. After the assignment, Davis continued to live in the house, without paying rent to Wilmarth. He also used the property as security in obtaining a $50,000 loan from Mr. Arnell Heaps, to whom Davis represented that he was its owner. He also gave Heaps a verbal option to purchase the property.

In February, 1982, Davis negotiated the sale of the property. At the closing, the buyers paid $20,000 in cash and assumed the contract obligation in the amount of $129,105.49. The $98,000 balance was to be paid pursuant to an agreement whereby the buyers would either transfer certain lots to Davis and Wilmarth or pay specified sums of money. The majority of the cash payment was in the form of a $15,862.50 check to Wilmarth. Although Davis had assigned his entire interest in the property to Wilmarth, the contract provided that Davis and Wilmarth would share equally in

---

1. Davis was named as a defendant in the complaint, but Dahnken was never able to locate him for service of process. He therefore was not a party in the action below, nor is he a party to this appeal and no issue has been raised as to his not having been served.

2. Section 25-1-4 states:
   Every conveyance made, and every obligation incurred, by a person who is, or will be thereby rendered, insolvent is fraudulent as to creditors, without regard to his actual intent,

if the conveyance is made or the obligation is incurred without a fair consideration.

3. Section 25-1-7 states:
   Every conveyance made, and every obligation incurred, with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors is fraudulent as to both present and future creditors.

the proceeds. Wilmarth testified that despite the recorded assignment, he did not consider himself to have a full interest in the property.

Shortly after the sale, Dahnken obtained a judgment against Davis and his company, New Worlds in Fund Raising Inc., and garnished the buyers of the property. Dahnken also commenced this action to have the assignment from Davis to Wilmarth set aside on the ground that it was a fraudulent conveyance.

Wilmarth does not dispute the trial court's finding that Davis was either insolvent when the assignment was made or that he became insolvent by reason thereof. Rather, he attacks the court's ruling that Davis' sale of the real estate to Wilmarth constituted a fraudulent conveyance under § 25–1–4 on the ground that he paid fair consideration for the assignment. In essence, Wilmarth's first two claims of error are based on the following reasoning: Section 25–1–4 of the Fraudulent Conveyance Act defines a fraudulent transfer as one made without "fair consideration." [4] To prove that he paid fair consideration for the assignment from Davis to Wilmarth, Wilmarth attempted to rely on cancelled checks he had made out to various business entities in which Davis was involved. Wilmarth claims that the checks to the businesses were really personal loans to Davis and that the trial court erred in excluding the checks from evidence.

■ The argument is without merit for two reasons. First, Wilmarth was allowed to read the entire substance of each check into evidence and therefore the information from the checks was before the court. Exclusion of the checks, which were cumulative because their substance had been presented to the court by oral evidence was at most harmless error. *E.g., Walters v.*

*Hitchcock,* 237 Kan. 31, 35, 697 P.2d 847, 850 (1985).

■ Second, an otherwise fraudulent transfer is not made nonfraudulent because it was made to satisfy a third party's obligation to the transferee even if the third party is a corporation set up by the transferor. Satisfaction of an obligation owed the transferee by a third party does not qualify as fair consideration under § 25–1–4. *See, e.g., Palmer v. Stokely,* 255 F.Supp. 674, 680 (W.D.Okla.1966); *Bennett v. Rodman & English, Inc.,* 2 F.Supp. 355, 358 (E.D.N.Y.), *aff'd,* 62 F.2d 1064 (2d Cir. 1932); *Hansen v. Cramer,* 39 Cal.2d 321, 324, 245 P.2d 1059, 1060 (1952); 30 A.L. R.2d 1204 (1953). In this case, the antecedent obligation which the assignment from Davis to Wilmarth was claimed to satisfy was clearly a third party's obligation to Wilmarth, not Davis' obligation. Only one of the seven checks Wilmarth offered in evidence was made out to Davis personally. That check was admitted into evidence. The other six were made out to various business entities in which Davis was involved. Wilmarth's testimony and the promissory notes from the business entities to Wilmarth evidencing the loans support the proposition that the amounts were paid to the business entities and not to Davis personally. The promissory notes were all signed by either the business entity which was the payee of the check or by Davis for the business entity to whom the check was made out. Nothing in the evidence, except for Wilmarth's assertions, tended to show that the amounts represented by the checks were personal loans to Davis. Therefore, even if they had been admitted, the checks were not inconsistent with the finding that the assignment from Davis to Wilmarth was without fair consideration.

4. Section 25–1–3 defines "fair consideration": Fair consideration is given for property, or obligation:
(1) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or,

(2) when such property, or obligation, is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small when compared with the value of the property or obligation obtained.

 Wilmarth's third claim, that the evidence did not support the trial court's finding that the assignment was made with actual intent to hinder, delay, or defraud Davis' creditors, is also without merit. Although actual fraudulent intent must be shown to hold a conveyance fraudulent pursuant to § 25–1–7, its existence may be inferred from the presence of certain indicia of fraud or "badges of fraud." *Givan v. Lambeth*, 10 Utah 2d 287, 291, 351 P.2d 959, 962 (1960). Badges of fraud that pertain to this case are a debtor's (1) continuing in possession and evidencing the perquisites of property ownership after having formally conveyed all his interest in the property, (2) making a conveyance in anticipation of litigation, and (3) making a conveyance to a family member without receiving fair consideration. *Id.*

 All these badges of fraud exist in this case. Davis assigned all his right, title, and interest in the property to his stepfather of 22 years for nominal consideration. The assignment to Wilmarth was made at a time when Davis' personal and business affairs were in a condition which would reasonably indicate that litigation was imminent. After the transfer, Davis remained in possession of the property and did not pay any rent to Wilmarth. He also borrowed $50,000, using the property as security for the loan. At the same time, Davis gave a verbal option to purchase the property, representing that he owned the property. When the property was sold several months later, Davis negotiated the sale and treated the property in all respects as his own. The cash proceeds of the sale, although directed mostly to Wilmarth, were actually received by Davis and treated as his own. Wilmarth in effect participated in these dealings by giving Davis a power-of-attorney. Further, the agreement to convey certain lots or pay money which was part of the consideration for the sale, indicated that both Davis and Wilmarth had interests in the property, contrary to the recorded assignment of Davis' entire interest to Wilmarth. Davis' financial statement indicated no obligation to Wilmarth, and Wilmarth did not report the proceeds of the sale on his income tax return.

There is ample evidence to support the trial court's finding that the assignment from Davis to Wilmarth was made with intent to delay, hinder, or defraud Davis' creditors.

Affirmed. Costs to respondent.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ.