Diane S. WALSH, Appellant (Plaintiff),

v.

Thomas WALSH; Thomas Walsh, Jr.; and Kenneth Edward Walsh, Appellees (Defendants).

No. 90–192.

Supreme Court of Wyoming.

Nov. 20, 1992.

Harry G. Bondi, Casper, for appellant.

Joe R. Wilmetti, Casper, for appellees.

Before THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ., and KALOKATHIS, District Judge.

URBIGKIT, Justice.

Appellant, Diane Walsh, appeals from a summary judgment in favor of appellees, her present or past husband and two sons. In her complaint, she seeks a reconveyance of real property from the two children to herself and her husband/ex-husband.[1] Appellant alleged that her husband's overbearing, threatening and demeaning manner "took away" her will to resist his efforts to gift her marital properties to their two sons. She argues for reconveyance based on her husband's undue influence and the existence of a confidential relationship. We find, however, that appellant failed to demonstrate existence of a genuine issue of material fact. Consequently, we affirm the grant of summary judgment in favor of appellees.

Both parties raise essentially the same issue on appeal. Did the district court improperly grant appellees' motion for summary judgment based upon a finding that there was no genuine issue of material fact? More specifically, we examine the circumstances in this case to determine whether a factual issue is presented based on alleged undue influence and the violation of a confidential relationship resulting from a conveyance of an interest in real estate. This is not a case in which we can take satisfaction in result, but it is also not a case where the law justifies restoration to the donor of her gift which she subsequently demanded be returned.

## I. FACTS

Since the record is not fully developed, the somewhat imprecise chronology which follows is gleaned from affidavits presented by both sides in support of motions for summary judgment,[2] as well as from appel-

---

* Chief Justice at time of conference.

1. We will refer to appellee Thomas Walsh as husband. The record reveals that a divorce action was filed in a separate proceeding, but not whether a decree had been granted. Before divorce, the real estate was held by the husband and wife in an estate by the entireties. *Amick v. Elwood*, 77 Wyo. 269, 314 P.2d 944 (1957); *Peters v. Dona*, 49 Wyo. 306, 54 P.2d 817 (1936). After divorce, the interest would be changed. *Choman v. Epperley*, 592 P.2d 714 (Wyo.1979). The difference under Wyoming law is that neither party had a separately conveyable interest before divorce, *Colorado Nat. Bank v. Miles*, 711 P.2d 390 (Wyo.1985); *Ward Terry & Co. v. Hensen*, 75 Wyo. 444, 297 P.2d 213 (1956); after divorce, the fifty percent interest of each, equally recognized in the decree, would be conveyable by either party, *Witzel v. Witzel*, 386 P.2d 103 (Wyo.1963), since the estate by the entirety lasts only through marriage. *Wambeke v. Hopkin*, 372 P.2d 470 (Wyo.1962). *Cf. Hundley v. Neely*, 365 P.2d 196 (Wyo.1961). We do not know whether the wife was seeking a one hundred percent title interest through the divorce division or only a fifty percent interest by virtue of her previous co-ownership.

Realistically, unless some sort of conspiracy had been pled, which it was not, we fail to find how the husband became a real party in interest as a litigable participant. He made no claim for return of the properties and had no ownership to reconvey. This was a mother versus children lawsuit based upon the husband's alleged conduct in persuading "the mother as co-owner to sign a conveyance resulting in the transfer of the parents' interests in the real estate as a gift to the parties' children." Actually, as is later recognized herein, the transaction was conceived in an effort to make the properties unavailable for potential claims by creditors.

2. In addition to affidavits submitted by all parties, the realtor, who facilitated the 1987 transfer of title for the two properties, also submitted an affidavit in support of appellees' position. Not only is the record sketchy in factual detail as a case submitted to the district court by cross-motion for summary judgment, but the hearing on the motion itself was not reported. Appellant describes the record as "patently underdeveloped with no depositions from either side." In appellant's briefing, the attack centers on the confidentiality relationship between husband and wife, while appellees contend, as a disparate issue, that it does not matter since the grantees took by conveyance from both and were uninvolved in influencing the property transfer.

late briefs which include consistent statements of fact filed by the respective parties.

For some time prior to 1987, appellant and her husband, Thomas Walsh, Sr., owned their residence in Casper, Wyoming and a cabin in Dubois, Wyoming.[3] The husband had also acquired a four-plex apartment building in Casper for which he faced foreclosure in 1987 because the mortgage and operating expenses regularly exceeded rental income. The record indicates that both appellant and husband feared foreclosure and a possible deficiency judgment which might affect their marital assets. Consequently, they conveyed ownership of the Casper residence and the Dubois cabin to their two sons, appellees Thomas Walsh, Jr., and Kenneth Edward Walsh, as a "gift"[4] by execution and recordation of quitclaim deeds in April 1987.

The parties now dispute who dreamed up the transfers and whether or not the appellant's participation in deed execution was coerced. Appellant contends that she was left mentally disabled following surgery for a brain tumor in 1983 and that her husband's verbal abuse during the course of their marriage reduced her ability and willingness to act on her own behalf. She also claims that after the properties were transferred, Thomas Walsh, Jr. made an oral promise to appellant that both properties would be reconveyed once the apartment foreclosure issue passed. On the other hand, appellees argue that the property transfers were appellant's idea and that she was the "moving force" behind the transaction. Both sons further contend that no promise of reconveyance was ever made.

Following the transfers, the husband filed for divorce, contending that the transferred properties should not be considered as marital property in the divorce proceeding. Subsequently, appellant brought her action seeking reconveyance of the two parcels of real property to the marital estate. After submission of affidavits, pretrial memoranda, and a brief in support of appellees' motion for summary judgment,[5] the district court conducted a hearing following which the district court denied her motion for summary judgment and granted the motion of her husband and two sons for summary judgment. This appeal followed.

## II. ANALYSIS

We review this summary judgment appeal under W.R.C.P. 56 in accordance with our well-established standard of review. We examine the affidavits and material presented to the district court in support of and in opposition to a motion for summary judgment according to the same standard applied by that court in deciding the motion. *Matthews v. Fetzner*, 768 P.2d 590, 592 (Wyo.1989). The moving party has the initial burden of showing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. W.R.C.P. 56(c); *Stundon v. Sterling*, 736 P.2d 317, 318 (Wyo.1987); *Cordova v. Gosar*, 719 P.2d 625 (Wyo. 1986). A material fact is characterized as a fact which, if proven, would have the effect of establishing or refuting an essential element of the claim or defense asserted by the parties. *Parker v. Haller*, 751 P.2d 372, 375 (Wyo.1988). If movant makes a showing that no genuine issue of material fact exists, the burden then shifts to the non-moving party to come forward with specific facts to demonstrate that a genuine issue of material fact does exist. *Nelson v. Crimson Enterprises, Inc.*, 777 P.2d 73, 76 (Wyo.1989). Conclusive affidavits or general allegations are insufficient and specific facts must be shown. W.R.C.P. 56(e);

---

3. Appellees' brief contains few page references to the record. Appellant's brief contains more references, but they are not especially specific or completely helpful. Appellant also failed to attach the mandatory appendix pursuant to W.R.A.P. 7.01(j) (formerly 5.01(5)(a)).

4. It appears from the record and both sides acknowledge that the intended purpose of the property transfer would have been frustrated. See Wyoming's version of the Uniform Fraudulent Conveyance Act, W.S. §§ 34–14–101 through 34–14–113 (1990).

5. The record does not indicate that appellant filed a brief in the district court in support of her motion for summary judgment.

*Davenport v. Epperly*, 744 P.2d 1110, 1112 (Wyo.1987); *Jones Land and Livestock Co. v. Federal Land Bank of Omaha*, 733 P.2d 258, 263 (Wyo.1987).

We then examine the record in the light most favorable to the non-moving party, granting her all favorable inferences which can properly be drawn from the evidence. *Wessel v. Mapco, Inc.*, 752 P.2d 1363, 1367 (Wyo.1988). If there is a dispute over a material fact which leads to conflicting interpretations or if reasonable minds might differ, then summary judgment is improper. *Wyoming Game and Fish Com'n v. Mills Co.*, 701 P.2d 819, 821 (Wyo.1985). On the other hand, a motion for summary judgment brought by a defendant "should be sustained in the absence of a real and material fact issue considering movant's burden, respondent's right to the benefit of all favorable inferences and any reasonable doubt, with credibility questions to be resolved by trial." *Cordova*, 719 P.2d at 640. When granted, summary judgment is a drastic remedy which deprives a litigant of the right to a trial and must be utilized with caution and restraint. *Kobielusz v. Wilson*, 701 P.2d 559, 560 (Wyo.1985).

## III. GENUINE ISSUE OF MATERIAL FACT

Appellant asserts that the district court erred by granting a summary judgment in favor of her husband and their two sons. On appeal, she contends that her husband's exercise of undue influence within the context of a confidential relationship creates a genuine issue of material fact and entitles her to a trial on the merits.

In *Estate of Short*, 785 P.2d 1167, 1170 (Wyo.1990) (quoting *Matter of Estate of Obra*, 749 P.2d 272, 277 (Wyo.1988)), we identified the three elements of undue influence: " '(1) opportunity to control; (2) a condition permitting subversion; and (3) activity on the part of the person charged.' " Appellant's complaint and affidavit affir-

matively allege that the husband had the opportunity to control appellant, that her impaired mental capacity created a condition permitting his subversion of her will, and that he did, in fact, exercise undue influence as charged. In effect, appellant argues that the application of undue influence upon a susceptible grantor warrants reconveyance of the transferred properties despite the fact that the grantees of the properties were themselves uninvolved in the exercise of any wrongful persuasion or persuasion of any kind.

We discussed the effect of undue influence in *Johnson v. Soulis*, 542 P.2d 867, 874 (Wyo.1975) (quoting A.L.I. Restatement, *Contracts* § 497 (1932)):[6]

> "Where one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a manner inconsistent with his welfare, a transaction induced by unfair persuasion of the latter, is induced by undue influence and is voidable."

Appellant seeks to avoid the transaction by having the district court find that she was unfairly persuaded by her husband to make a gift of the properties in question to their sons. Appellant cites *Johnson* for support, but then jumps to the proposition that since her husband exercised undue influence over her, their sons, as recipients of the properties, must demonstrate that the transaction was fair and conducted in good faith—something which appellant argues her sons have failed to do.

It is significant that appellant makes no claim that her sons, as grantees of the properties, did themselves provide any encouragement or exercise undue influence. The only allegation appellant raises against her sons is that Thomas Walsh, Jr. promised to reconvey the properties to appellant and her husband after the threat of foreclosure had passed. This allegation is of no consequence, however, since the alleged promise was made *after* the transfer of

---

**6.** Modified and expanded without changing the    principle in Restatement (Second) of Contracts,

ownership.[7] Thus, though she attempts to hold her sons liable for the behavior of their father, the success of her argument hinges on whether or not she can avoid the transaction based on the alleged undue influence of her husband.

This court has stated that a mere family relationship does not give rise to a confidential relationship. *Zullig v. Zullig*, 502 P.2d 198, 202 (Wyo.1972). However, we have also stated that once certain circumstances are present, a confidential relationship may be established and the activities of those so related will be zealously scrutinized. *Perry v. Vaught*, 624 P.2d 776, 783 (Wyo.1981) (citing *Bergren v. Bergren*, 77 Wyo. 438, 317 P.2d 1101 (1957)); *Brug v. Case*, 600 P.2d 710 (Wyo.1979); *Baldwin v. Birchby*, 346 P.2d 278 (Wyo.1959). We must, therefore, determine whether a confidential relationship exists between appellant and her sons.

Appellant cites *Baldwin* in support of her proposition that a confidential relationship exists. In *Baldwin*, existence of a confidential relationship between the grantor father and grantee sons was admitted by the sons. Despite this relationship, the court failed to find undue influence by the sons in violation of the relationship. On other occasions, we have discussed a grantee's alleged undue influence within the confines of a confidential relationship. For example, in *Perry*, we found that the grantor's dependence on grantee created a confidential relationship. We stated that "once a confidential relationship has been demonstrated, the burden then shifts to the recipient of the property to establish that the transaction was fair and conducted in good faith." *Perry*, 624 P.2d at 783 (citing *Brug*, 600 P.2d 710 and *Baldwin*, 346 P.2d 278).

In *Estate of Short*, 785 P.2d at 1170 (citing *Perry*, 624 P.2d 776) (footnote omitted), we reiterated this proposition and said:

> If the party challenging the validity of a deed transaction on the basis of undue influence establishes a confidential relationship, the party who received the property has the burden to establish that the transaction was fair and conducted in good faith.

In the present case, appellant fails to establish the existence of a confidential relationship between herself and her sons.

1. Appellant does not allege nor does she show evidence of the existence of a confidential relationship between herself and her sons which involved the deeds.

2. The sons do not admit the existence of such a relationship. *Cf. Baldwin*, 346 P.2d 278.

3. There is no evidence of appellant having been dependent on the grantees. *Cf. Perry*, 624 P.2d 776.

4. There is no evidence to suggest that the sons actually became involved in some fashion in the consideration from which the conveyance did result. Consequently, there was no allegation or factual evidence reflecting exercise of any influence.

Nevertheless, appellant suggests that her sons should be burdened with demonstrating that they received the properties fairly and in good faith. We disagree and rely on the reasoning set forth in *Zullig*, 502 P.2d at 202, where we said:

> It has been held that even where there is a confidential relationship the burden is not upon the child as grantee to show the

§ 177 (1981).

**7.** Appellant stated in her affidavit in support of her motion for summary judgment:

> 9. *After* your Affiant had signed the Warranty [sic] Deed conveying both pieces of property to Defendants Thomas Walsh, Jr., and Kenneth Walsh, Defendant Thomas L. Walsh, Jr., told your Affiant "Mom, you do not have anything to worry about and we (meaning Plaintiff and Defendant Thomas Walsh [Sr.] ) will get it (meaning both pieces

of property) back as soon as the apartment house issue was over."

(Emphasis added.) Appellant also stated in the same affidavit that:

> 10. In September of 1989, the same Defendant Thomas Walsh, Jr., also living at 292 South Third Avenue, physically assaulted your Affiant, causing your Affiant to flee from that home, and your Affiant has not been able to reside in said home since that time.

absence of fraud and undue influence unless it be shown he exercised some activity in procuring the deed or if the transaction was without consideration, *Osterberg v. Osterberg*, 68 Cal.App.2d 254, 156 P.2d 46, 49 [Cal.1945]. In addition to this we cannot say there is any other evidence that [grantee] dominated his father or that his father placed any particular confidence, faith, or reliance upon [grantee] in the conduct of his affairs. We have held that a dominant position of a child will not be presumed from the relationship alone, *In re King's Estate*, 49 Wyo. 453, 57 P.2d 675, 678 [1936].

Even though the transaction in this case was accomplished without appellant receiving monetary consideration, appellant fails, however, to satisfy the standard set forth in *Zullig*. Furthermore, even assuming, arguendo, there was some confidential relationship by virtue of the family status between appellant and her sons, there is nothing provided within the adequate and uncontradicted evidence to demonstrate conduct other than action by them fairly and in good faith.

The sons received the properties in this case. In their affidavits in support of their motion for summary judgment, both sons stated that appellant initiated the transfer, that she was not the least bit hesitant to make the transfer, and that she fully understood the implications and finality of transferring the properties to her sons. *Zullig*, 502 P.2d 198. Appellant, on the other hand, offers no assertion to the contrary in her own affidavit and fails to contradict her sons' affidavits. She attributes the exercise of undue influence entirely to her husband, not her sons. None of the three elements of undue influence in *Matter of Estate of Obra*, 749 P.2d at 277, "(1) opportunity to control; (2) a condition permitting subversion; and (3) activity on the part of the person charged," were shown by the evidence in this case to apply to either son who became a grantee from the

common conveyance executed by the mother and the father. Although the sons received the properties, appellant does not allege that they acted unfairly or in bad faith in order to procure the properties. Thus, the sons satisfy any analytical obligation to show fairness and good faith and, consequently, their behavior is not a genuine issue of material fact in this case. *Maurer v. Ballou*, 440 P.2d 126 (Wyo. 1968). Appellant only argues that since her husband exercised undue influence within a confidential relationship, her sons should be required to show that their gain was secured fairly and in good faith. However, since appellant has failed to assert or show supportive evidence that appellant and her sons were engaged in a confidential relationship or that her sons in any way became involved in her decision to sign the deed, we do not impose that obligation on them as the grantees. *Zullig*, 502 P.2d 198. *Cf. Baldwin*, 346 P.2d 278.

One course of action which appellant might have chosen in this case would have been to posture her case in contention that her husband and sons somehow acted "in concert" to acquire her ownership interest in the two properties. It appears that the possibility of "in concert" behavior might at least have been a colorable issue sufficient, in itself, to overcome the confidential relationship barrier. Appellant, however, failed to raise the issue of whether or not her husband and sons acted "in concert." In fact, even after appellees raised the possibility of "in concert" actions in their brief to this court on appeal,[8] appellant failed to respond or appreciate the potential significance of the argument. From the evidence in the record, it appears appellant's hope for recovery in this case hinged on a showing of a conspiratorial "in concert" activity among the appellees sufficient to justify application of the doctrine of unjust enrichment and subsequent application of a constructive trust remedy.

---

8.  There is no allegation in this case, and there is not a scintilla of evidence that the Grantees, Thomas Walsh, Jr. and Kenneth Edward Walsh, or either of them, either individually or *in concert* with Appellee, Thomas Walsh [Sr.], their father, was guilty of any wrongdoing, fraud or misconduct of any kind which induced the Appellant to convey the property to them.
(Emphasis added.)

The validity of a gift deed is not in question. *May v. McCormick By and Through Swallow*, 704 P.2d 709 (Wyo. 1985); *York v. James*, 62 Wyo. 184, 209, 165 P.2d 109 (1946). Furthermore, we have clearly and decisively stated that a family relationship by itself is not a suspicious circumstance for consideration of undue influence. *Skinner v. Skinner*, 601 P.2d 543 (Wyo.1979); *Brug*, 600 P.2d 710.

Appellant's argument on appeal fails to convince this court of the existence of a genuine issue of material fact sufficient to overcome appellees' motion for summary judgment. Each claim upon which appellant brings her appeal is missing a significant and necessary element. First, appellant claims that her husband exercised undue influence in convincing her to transfer ownership of the properties to their sons. While appellant's husband may well have urged her compliance in the transaction, the fact that he too transferred his ownership interest in the same properties provides evidence that he did not take advantage nor benefit at his wife's expense. Appellant offered no evidence in contravention.

Second, appellant frames her argument in the context of a confidential relationship existing between herself and her husband. *Zullig*, 502 P.2d 198. She fails, however, to include her sons in the allegation. Thus, regardless of her husband's alleged wrongful influence, appellant fails to offer any evidence by which to overcome the legal principle that "a deed is good without consideration in the absence of some wrongful act *on the part of the grantee*, such as fraud or undue influence." *Maurer*, 440

P.2d at 128 (emphasis added). *See Strom v. Felton*, 76 Wyo. 370, 302 P.2d 917 (1956).

Finally, although the sons apparently did benefit by the gift obtained by appellant's conveyance of a co-ownership interest upon her husband's recommendations, appellant failed to premise any cause of action on unjust enrichment resulting from appellees' common plan or conspiratorial action. We will not create a cause of action for appellant that she must raise herself.[9] Since appellant offered no evidence of her sons' undue influence and since she failed to challenge the transaction on the basis of unjust enrichment, this court will not fashion a remedy to rescind the conveyance. *Strom*, 302 P.2d 917.

## IV. CONCLUSION

We affirm the grant of summary judgment in favor of appellees in this case. Appellant, in resisting the motion for summary judgment, fails to present specific facts to demonstrate existence of a genuine issue of material fact. *Nelson*, 777 P.2d 73. As the case was pleaded, actual facts were not really controverted. Thus, appellees satisfy the requirement for affirmation of a motion for summary judgment brought by a defendant. *Cordova*, 719 P.2d 625. We find no credibility questions to be resolved by trial. *Davenport*, 744 P.2d at 1114.

The summary judgment entered in favor of appellees, the father as grantor and the sons as grantees, is affirmed.

THOMAS and CARDINE, JJ., file dissenting opinions.

---

**9.** In the complaint, prayer for recovery of the joint interest in the properties was based on undue influence of the husband in "caus[ing] [wife] and [husband] to convey * * * to the parties' sons * * *." In pretrial conference memorandum it is stated: "The only issue in this case is whether there was sufficient consideration for the transfer of Plaintiff's and her husband's property to Defendants Thomas Walsh, Jr., and Kenneth Edward Walsh."

The prayer of the complaint is a curiosity since it seeks reconveyance not only to plaintiff, the mother, but also to defendant, the father, who does not seek that relief:

> WHEREFORE, Plaintiff prays that the court enter its decree reconveying the subject real property described above to Plaintiff and Defendant Thomas Walsh as tenants by the entireties * * *.

The record reveals that a divorce proceeding was pending in February 1990, but does not inform whether a decree was later granted. Obviously, if the parties are now divorced, a recreated estate by the entireties is not possible. *Amick v. Elwood*, 77 Wyo. 269, 314 P.2d 944 (1957); *Ward Terry & Co. v. Hensen*, 75 Wyo. 444, 297 P.2d 213 (1956).

THOMAS, Justice, dissenting.

I respectfully dissent and would reverse the trial court's granting of summary judgment. I am satisfied there is a genuine issue of material fact that initially must be resolved by a trial in this case. That question is whether there was a bona fide transfer of the property to the two sons. If a finder of fact were to conclude that the transfer of the property to the sons was not a gift made in good faith, but was accomplished for some ulterior or improper reason, then a number of the majority's rules shift substantially.

The record demonstrates both Mr. and Mrs. Walsh feared foreclosure upon the four-plex and a possible deficiency judgment that might impact their marital assets. In anticipation of foreclosure, the couple made gifts of their Casper residence and their Dubois cabin to their two sons, with the conveyances being accomplished by execution and recordation of quitclaim deeds. Mr. Walsh and the two sons argue in their brief there is no allegation or evidence in this case that either of the sons, individually, or in concert with their father, was guilty of any wrongdoing, fraud, or misconduct of any nature that induced their mother to convey the property to them. Nevertheless, if these properties were transferred in fraud of creditors, that arguably would invalidate the gifts to the sons as fraudulent conveyances.

Wyoming's version of the Uniform Fraudulent Conveyance Act, Wyo.Stat. § 34–14–108 (1990) provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present **or future** creditors, is fraudulent as to both present **and future** creditors [emphasis added].

Whether a conveyance is, or is not, fraudulent as to creditors is largely a **question of fact**. *Credit Union of America v. Myers*, 234 Kan. 773, 676 P.2d 99 (1984). The elements comprising a fraudulent conveyance are first, an intent on the part of the grantor to hinder, delay, or defraud his creditors and second, the participation of the grantee in such fraudulent scheme, or such knowledge of facts and circumstances on the part of the grantee as would import knowledge of the fraud on him. *Myers.*

Wyoming's case law interpreting § 34–14–108 of the Uniform Fraudulent Conveyance Act is minuscule. In *Matter of Estate of Reed*, 566 P.2d 587 (Wyo.1977), the issue was whether a legatee could renounce a bequest made to him under the will of a testatrix following the filing of the executor's final account and petition for redistribution. The renunciation was filed the same day judgment was entered against the legatee by a judgment creditor, which was four days prior to the date fixed for final settlement. *Reed.* The court held that, in the absence of any explanation of good faith or any showing of consideration, and using the badges of fraud analysis, the transfer was a fraudulent conveyance intended to hinder and delay judgment creditors. *Reed.* The court adopted the reasoning of Justice Traynor, stating that:

> [U]nder the Uniform Fraudulent Conveyance Act in effect in California, a transfer of property to defeat a creditor can be set aside; a renunciation by a legatee is a transfer of property in that it causes title to his share of the estate to pass to another legatee; and is a fraudulent conveyance when done to defeat a creditor. *Reed,* 566 P.2d at 589.

The facts in this case are similar. Mr. and Mrs. Walsh conveyed property to their sons in anticipation of a foreclosure proceeding with the potential of a deficiency lien. The Walsh's tried to protect marital assets by placing them out of reach of their creditors.

In order to determine whether a conveyance was made with the intent to hinder, delay, or defraud creditors, six badges or indicia of fraud should be examined.[1] "A

---

1. *Matter of Estate of Reed*, 566 P.2d 587 (Wyo. 1977); *City of Arkansas City v. Anderson*, 243 Kan. 627, 762 P.2d 183 (1988), *cert. denied sub nom., Louisburg Grain Company v. City of Ar-*

*kansas City, Kansas*, 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989); *Dahnken, Inc. of Salt Lake City v. Wilmarth*, 726 P.2d 420 (Utah 1986); *Credit Union of America v. Myers*, 234

badge of fraud is a fact tending to throw suspicion upon the questioned transaction, excites distrust as to bona fides, raises an inference that a conveyance is fraudulent and by its presence usually requires a showing of good faith." *Reed,* 566 P.2d at 589. The enumerated badges or indicia of fraud generally recognized to prove a fraudulent conveyance are: "(1) a relationship between the grantor and grantee; (2) the grantee's knowledge of litigation against the grantor; (3) insolvency of the grantor; (4) a belief on the grantee's part that the contract was the grantor's last asset subject to a[n] execution; (5) inadequacy of consideration; and (6) consummation of the transaction contrary to normal business procedures." *Myers,* 676 P.2d at 104. This court has said that a single badge of fraud may stamp a transaction as fraudulent. *Reed* (citing *Payne v. Gilmore,* 382 P.2d 140 (Okl.1963)).

The first badge of fraud is a relationship between grantor and grantee. The parental relationship between Mr. and Mrs. Walsh and the grantees, Thomas Walsh, Jr. and Kenneth Edward Walsh, satisfies the first badge of fraud. The facts and circumstances surrounding a transfer or conveyance of property between members of a family are properly subjected to a more strict scrutiny as to their bona fides than a similar transfer or conveyance between strangers, where the rights of creditors are, or may be, thwarted thereby. *City of Arkansas City v. Anderson,* 243 Kan. 627, 762 P.2d 183 (1988), *cert. denied sub nom., Louisburg Grain Company v. City of Arkansas City, Kansas,* 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989). The more strict scrutiny was not invoked in the summary judgment proceeding.

The second badge of fraud is the grantee's knowledge of litigation against the grantors. In Kenneth Edward Walsh's affidavit he states, "7. During early 1987 I was out of town a great deal on my job and I am not familiar with the ownership, fore-closure upon, or disposition of the 4–plex which my parents owned." Thomas Walsh, Jr. did not mention the possible foreclosure proceeding in his initial affidavit. However, in his response affidavit, Thomas Walsh, Jr. said, "4. * * * There was never any such discussion and I wasn't aware of any problem with any four-plex."

The third badge of fraud is insolvency of the grantor. Mrs. Walsh in her complaint and Mr. Walsh in his answer both admit the possibility of a deficiency lien. The complaint reads:

2. * * * [T]o convey the above-described real property to the parties' sons, Thomas Walsh, Jr., and Kenneth Edward Walsh, for no consideration and for the purpose of avoiding the potentiality of a deficiency judgment lien upon said property because other real property belonging to Plaintiff and Defendant Thomas Walsh had gone into foreclosure from which there was the potentiality of a deficiency.

Mr. Walsh's answer reads:

B. That during the early part of 1987 it appeared to the Plaintiff and this Defendant that the real property investment was not a good investment, was not productive as had been expected and there was a serious possibility that said investment property would be foreclosed upon and a possible deficiency judgment obtained against the Plaintiff and this Defendant * * *.

It appears that insolvency of the grantors was believed by them to be imminent.

The fourth badge of fraud is a belief on the grantee's part that the contract was the grantor's last asset subject to an execution. Such a belief on the part of either son is not clear from the record. In considering the bona fide nature of the transaction, we cannot consider any matter upon which the record is silent. *Reed.*

The fifth badge of fraud is inadequacy of consideration. The majority concedes the

Kan. 773, 676 P.2d 99 (1984); *Montana National Bank v. Michels,* 193 Mont. 295, 631 P.2d 1260 (1981); *Payne v. Gilmore,* 382 P.2d 140 (Okl. 1963); *Royal Indemnity Company v. McClendon,* 64 N.M. 46, 323 P.2d 1090 (1958); *Evans v. Trude,* 193 Or. 648, 240 P.2d 940 (1952); *Territorial Savings & Loan Ass'n v. Baird,* 781 P.2d 452 (Ut.App.1989); *Cashion Gin Company v. Kulikov,* 1 Ariz.App. 90, 399 P.2d 711 (1965).

transaction in this case was accomplished without Mrs. Walsh receiving monetary consideration. There is no evidence from the record that the Walshes received anything of value for the conveyance of the property to their two sons.

The sixth badge of fraud is the consummation of the transaction contrary to normal business procedures. Donald J. Smith, a realtor in Casper, submitted an affidavit stating he managed the real property owned by Mr. and Mrs. Walsh, namely the four-plex. Mr. Smith said he had been acquainted with Mr. and Mrs. Walsh for five years, and he had drawn up, and discussed with them, the quitclaim deed transferring the property to their sons. The transfer of property from parents to their children is not, absent other circumstances, an unusual business transaction. We, however, must look at the obvious result of the transfers. Mr. and Mrs. Walsh conveyed property to their sons as a gift which effectively placed the property beyond the reach of their personal creditors. It is arguable that a finder of fact could find the transfer of a parent debtor's property to his or her children a fraudulent conveyance when the parents are faced with foreclosure proceedings on other property owned, with insufficient funds to pay the debts.

After reviewing the record in the light most favorable to Mrs. Walsh and granting her all favorable inferences which can properly be drawn from the evidence, *Allmaras v. Mudge*, 820 P.2d 533 (Wyo.1991), there is evidence in the record that could lead to conflicting interpretations and cause reasonable minds to differ, making summary judgment improper. *Wyoming Game and Fish Com'n v. Mills Company*, 701 P.2d 819 (Wyo.1985). The disputed facts cast suspicion upon the transaction. Those same disputed facts could support an inference that the conveyances were fraudulent. The grantees might be able to rebut such an inference at trial, however, where they would have the opportunity to prove the properties were transferred in good faith.

I recognize the propositions espoused by the majority with respect to not only the role of the sons, but also the application of·

*Zullig v. Zullig*, 502 P.2d 198 (Wyo.1972). Those propositions assume a bona fide transfer to the two sons by the gift of the property, and that assumption is the focus of my concern. In arriving at that assumption, the majority determines the question of whether a confidential relationship existed between Mr. and Mrs. Walsh. The existence of a confidential relationship is a question of fact. *Perry v. Vaught*, 624 P.2d 776 (Wyo.1981); *Brug v. Case*, 600 P.2d 710 (Wyo.1979); *Baldwin v. Birchby*, 346 P.2d 278 (Wyo.1959).

There is a genuine issue of material fact as to whether or not the transfer of the property from Mr. and Mrs. Walsh to their sons was a bona fide gift. This genuine issue of material fact entitles Mrs. Walsh to a trial on the merits. If the conveyances were not bona fide transfers, then the sons became alter egos of the husband who may well have been in a position to exercise undue influence over his wife. Mr. Walsh and the two sons were not entitled to summary judgment as a matter of law. The trial court's order granting the summary judgment in this case should be reversed.

CARDINE, Justice, dissenting.

I dissent. I would reverse. Summary judgment was granted appellees, depriving appellant of her day in court. Appellant has a right to be heard. Summary judgment may only be granted when

> there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law.

W.R.C.P. 56(c). All of the facts here are in dispute. The summary judgment is contrary to our well-established and oft-repeated rule: "Summary judgments are appropriate only in cases in which there exists no question of material fact requiring resolution at trial." *Kirby Bldg. Sys., Inc. v. Independence Partnership No. One*, 634 P.2d 342, 345 (Wyo.1981). *See also Zmijewski v. Wright*, 809 P.2d 280, 282 (Wyo.1991). "The issues presented should be resolved at trial where the disputed issues of fact can be fully developed and the fact finder can then decide what the true facts

really are." *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1112 (10th Cir.1991).

This dispute in facts was resolved in a trial by affidavit. The court essentially states that the two sons are strangers without knowledge of how the transaction came about; that there was not intimidation, undue influence, unfair, dishonest dealings with the mother; and that the deed to this lady's home, to everyone's surprise, just fell on their doorstep. Life in the real world tells us otherwise. This was a family affair in which all were involved. Appellant's sons were not strangers to the transaction; not innocent, bona fide non-participants in this unconscionable taking of appellant's home. "Neither the trial court nor the supreme court [has] a duty nor a right on a motion for summary judgment to resolve any existing issues of fact." *Madison v. Marlatt*, 619 P.2d 708, 712 (Wyo.1980). This appellant should have her day in court.